Lauriat, Peter M., J.
The plaintiffs brought this action to recover damages allegedly resulting from Nurse Christine DeMelis’s care of John Makrakis (“John”) on March 9, 2006. The plaintiffs allege that DeMelis improperly administered a toxic dose of the drug pancuronium bromide (sold under the brand name Pavulon), to John when he became agitated. As a result, the plaintiffs allege that John developed kemicterus.
The plaintiffs have now moved to compel certain discoveiy from Brigham & Women’s Hospital (“BWH”). Specifically, the plaintiffs request an order requiring BWH to restore all electronic backup tapes containing emails originating from the email boxes of at least thirteen employees or former employees of BWH,[1] beginning in January 1987 and continuing through the present. The plaintiffs further seek a court order compelling BWH to employ a third-party vendor to search the restored email archives for emails containing the terms “Makrakis,” “DeMelis,” “pancuronium,” and “Pavulon,” in order to locate emails responsive to the plaintiffs’ discovery requests. Lastly, the plaintiffs seek an order compelling production of all emails sent or received by DeMelis at any time.
In opposing the motion, BWH asserts that the restoration and search of the backup tapes would be unduly burdensome and prohibitively expensive. BWH further contends that the emails would be of little added benefit to the plaintiffs because they have already obtained substantial discoveiy regarding the incident at hand, including BWH’s records of its investigation of the incident, John’s complete medical records from his five-month admission at BWH’s NICU, BWH’s complete personnel file on DeMelis, a complete copy of the investigation of the incident by the Division of Licensure of the Department of Public Health, deposition testimony of at least ten BWH employees, and copies of emails from the date of the incident that were preserved on the individual computers of several BWH employees.
DISCUSSION
Parties litigating in the courts of this Commonwealth have the right to “obtain discoveiy regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . .” Mass.R.Civ.P. 26(b)(1). Pursuant to Rule 34(a), a party may request any other party “to produce and permit the party making the request... to inspect and copy, any designated documents ... , or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope” of discoverable evidence. When a party fails to respond adequately to a request for production of documents pursuant to Rule 34, the party seeking discoveiy may move for an order compelling production of the documents as provided in Rule 37(a)(2).
The scope of discoverable evidence, though broad, is not absolute. The court may limit or preclude dis-coveiy as “justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.” Mass.R.Civ.P. 26(c); see *270 also Mass.R.Civ.P. 37(a)(2) (“If the court denies the motion [to compel discovery] in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(c)”). The breadth of discoverable evidence is thus tempered by the court’s authority to limit discovery that would impose an unreasonable burden or expense on the party responding to the discovery request.[2]
In support of its opposition to the plaintiffs’ motion, BWH submitted two affidavits from Jennings Aske, the chief information security officer for Partners Healthcare System (“Partners”), that detailed the nature of BWH’s computer archives and the cost of restoring its backup tapes. Aske explained that Partners provides email accounts to approximately 55,000 individuals, including BWH’s employees. The electronic information is stored on a series of computers, called servers, which are connected to create a network. The network permits users to access the information from multiple physical locations. Over time, electronic information fills the available storage space on the servers, which necessitates removal of the information from the servers by copying it onto backup tapes. Thus, to access the complete email archives of BWH employees, they would have to be restored from the backup tapes.
Once the relevant backup tapes are identified, each tape must then be restored to a server on the PHP network, which would cost approximately $550 per tape if outsourced to a third parly. Aske estimated the cost of restoring a mere sixteen months of backup tapes containing the emails of fifteen individuals to be approximately $575,000. Aske further stated that an expanded search covering all individuals identified in the plaintiffs’ motion to compel, dating back to 1987, would be “exponentially more expensive and time consuming.”
Based on Aske’s affidavits, the court is satisfied that the plaintiffs’ requested production of emails stored on backup tapes would impose an unreasonable burden and expense on BWH. The plaintiffs’ request is not limited to a narrow time frame, but rather seeks restoration of all backup tapes containing emails from over thirteen past and present BWH employees over a twenty-two — year period of time. Furthermore, the plaintiffs have not explained why other available sources of discovery are insufficient to secure the information they suspect may be found in emails stored on the backup tapes.
At the same time, the court recognizes that BWH’s backup tapes could potentially contain relevant information, and that the plaintiffs should at least be afforded an opportunity to explore what information might be found on the tapes. Given the magnitude and cost implicated by the plaintiffs’ discovery request, however, it is necessary to fashion a reasonable approach to allowing the plaintiffs an opportunity to pursue discovery without placing an unreasonable burden on BWH. The court will therefore permit the plaintiffs, at their own expense, to obtain a sampling of the emails stored on the backup tapes. If the information obtained from this sample warrants a further search of backup tapes for relevant emails, the plaintiffs may move for a further discovery order from this court, at which time the court will determine the appropriate scope of discovery and the allocation of costs between the parties.[3]
ORDER
For the foregoing reasons, the plaintiffs’ motion to compel discovery from BWH & Women’s Hospital is ALLOWED, in limited part, as follows:
(1) The plaintiffs shall be entitled to obtain a sampling of relevant emails stored on BWH’s backup tapes;
(2) The plaintiffs shall determine the scope of the sampling by specifying (1) the applicable period of time, and (2) which email account or accounts must be restored;
(3) The plaintiffs shall bear the cost of restoring and searching the emails in this initial sample of backup tapes;
(4) BWH shall restore the sampling of backup tapes as requested by the plaintiffs and shall produce all emails contained therein that are responsive to the plaintiffs’ discovery requests;
(5) Based on the information obtained from this sample, the plaintiffs may move for a further discovery order to compel further production of emails stored on backup tapes.

 The plaintiffs request restoration of the email accounts of the following individuals: Marianne Cummings, Sandra Harmon, Mary White, Paula Gillette, Mairead Hickey, Michael Cotugno, Tola Dawodu, William Churchill, Joanne Salines, Kelly Doherty, Kendra Ruel Woo, David Beadles, Christine Demelis, all employees of the human resources department as of March 2006, all doctors who cared for John at any time, and all of the nurses in the neonatal intensive care unit (“NICU”).

 The Federal Rules of Civil Procedure contain specific rules governing electronic discovery. Rule 26(b)(2)(B) imposes limitations on a party’s obligation to produce electronically stored information:
A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause . . . The court may specify conditions for the discovery.

 For a discussion of factors relevant to determining an appropriate allocation of costs for restoring and searching electronically stored information from backup tapes, see Zubulake v. UBS Warburg, LLC, 216 F.R.D. 280, 284-89 (S.D.N.Y. 2003); Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 322-23 (S.D.N.Y. 2003).